# Illinois Official Reports

## Appellate Court

---

### *Hardiman v. Aslam*, 2019 IL App (1st) 173196

---

| | |
|---|---|
| Appellate Court Caption | TIO HARDIMAN, Plaintiff-Appellant, v. REHAN ASLAM; MIKE FLANNERY; KATIE FRASER; ELIZABETH KANE; and FOX TELEVISION STATIONS, LLC, Defendants-Appellees. |
| District & No. | First District, First Division<br>Docket No. 1-17-3196 |
| Filed<br>Rehearing denied | February 25, 2019<br>March 26, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 14-L-12703; the Hon. Patricia O'Brien Sheahan, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Alfred S. Phelps, of Dolton, for appellant.<br><br>Mandell Menkes LLC, of Chicago (Steven P. Mandell, Natalie A. Harris, and George V. Desh, of counsel), for appellees. |
| Panel | JUSTICE PIERCE delivered the judgment of the court, with opinion.<br>Justices Griffin and Walker concurred in the judgment and opinion. |

**OPINION**

¶ 1     This appeal concerns allegations by a public figure that members of a media news organization made defamatory statements about him. It is therefore necessary to understand the nature and context in which the statements were made and the elements and defenses applicable in defamation actions by public figures against members of the press. The circuit court of Cook County entered summary judgment in favor of defendants on plaintiff's defamation claims, and dismissed with prejudice certain defendants due to plaintiff's failure to timely file his complaint against them. Plaintiff appeals. For the reasons that follow we affirm the circuit court's judgment.

¶ 2                                    I. BACKGROUND
¶ 3                                   A. Defamation Law
¶ 4     The essential elements of actionable defamatory statements are well established. To prove defamation, a plaintiff must show that the defendant made a false statement about the plaintiff, there was an unprivileged publication to a third party by the defendant, and the statement damaged the plaintiff. *Solaia Technology, LLC v. Specialty Publishing Co.*, 221 Ill. 2d 558, 579 (2006). Defamatory statements are actionable either *per se* or *per quod*. Statements are defamatory *per se* if "the statements that form the basis of the action *** falsely charge the plaintiff with misconduct or incapacity in words so obviously and naturally harmful that they are actionable without proof of special damages." *Costello v. Capital Cities Communications, Inc.*, 125 Ill. 2d 402, 414 (1988). Illinois recognizes five categories of statements that are defamatory *per se*: (1) words that impute a person has committed a crime, (2) words that impute a person is infected with a loathsome communicable disease, (3) words that impute a person is unable to perform or lacks integrity in performing her or his employment duties, (4) words that impute a person lacks ability or otherwise prejudices that person in her or his profession, and (5) words that impute a person has engaged in adultery or fornication. *Green v. Rogers*, 234 Ill. 2d 478, 491-92 (2009). No showing of special damages—*i.e.*, damages of a pecuniary nature—is required for statements that are defamatory *per se*. *Costello*, 125 Ill. 2d at 414.

¶ 5     If the offending statement does not fall within one of the five recognized categories of defamation *per se*, a plaintiff may pursue a claim for defamation *per quod*. A cause of action for defamation *per quod* may exist where the defamatory character of the statement is not apparent on its face but extrinsic circumstances demonstrate an injurious meaning, or if the statement is defamatory on its face but does not fall within a category of statements that are actionable *per se*. *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 103 (1996). A plaintiff may only prevail on a claim for defamation *per quod* if the plaintiff pleads and proves special damages, which are actual damages of a pecuniary nature. *Hill v. Schmidt*, 2012 IL App (5th) 110324, ¶ 25. In sum, to pursue a defamation *per quod* action, a plaintiff must plead and prove extrinsic facts to explain the defamatory meaning of the statement and that he suffered actual monetary damages as a result of defendants' defamatory statement.

¶ 6     Regardless of whether a defamation claim involves statements that are alleged to be defamatory *per se* or *per quod*, where the offending statement is made by a member of the press or a media organization about a public figure—which includes a person running for public office (*Matchett v. Chicago Bar Ass'n*, 125 Ill. App. 3d 1004, 1011 (1984))—first

amendment protections require that the plaintiff "may not obtain redress in a libel action unless he proves that the allegedly defamatory statements were made with actual malice." *Costello*, 125 Ill. 2d at 418-19 (citing *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964)). The inquiry into whether a statement was made with actual malice is subjective. *Wanless v. Rothballer*, 115 Ill. 2d 158, 170 (1986) (citing *Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 511 n.30 (1984)). The plaintiff must prove by clear and convincing evidence that defendants "published the defamatory statements with knowledge that the statements were false or with reckless disregard for their truth or falsity." *Costello*, 125 Ill. 2d at 419. A reckless disregard for the truth may be found "where the evidence shows that the defendant in fact entertained serious doubts as to the truth of the publication." *Id.* Furthermore, a "[f]ailure to investigate does not itself establish actual malice if the defendants did not seriously doubt the truth of their assertions." *Id.* at 421. We will "infer that a media defendant published defamatory statements in reckless disregard for their truth only when the defendant's investigation has revealed either insufficient information to support the defamatory accusations in good faith or creates a substantial doubt as to the truth of those accusations." *Id.*

¶ 7 Lastly, for purposes of the issues of this appeal, the substantial truth doctrine is a defense to a defamation claim. *Lemons v. Chronicle Publishing Co.*, 253 Ill. App. 3d 888, 890 (1993). So long as the alleged defamatory statement is substantially true, the statement is not actionable. *Parker v. House O'Lite Corp.*, 324 Ill. App. 3d 1014, 1026 (2001). To be substantially true does not mean that every detail of the statement needs to be accurate. *Id.* The defendant bears the burden of establishing the substantial truth of the assertions, which can be accomplished by showing that the "gist" or "sting" of the defamatory material is true. *Id.*

¶ 8 Here, plaintiff Tio Hardiman asserted claims of defamation, "libel on the internet," false light and invasion of privacy, "false light and invasion of privacy on the internet," reckless infliction of emotional distress, "reckless infliction of emotional distress on the internet," and libel *per se* against defendants Rehan Aslam, Mike Flannery, Katie Fraser, Elizabeth Kane, and Fox Television Stations, LLC (Fox). All of plaintiff's claims centered on two statements made by defendants: that plaintiff (1) was a former gang member and (2) was convicted of domestic battery. We now turn to the events giving rise to plaintiff's claims.

¶ 9                                       B. Plaintiff's Claims

¶ 10 In August 2013, plaintiff declared his intention to run for governor of Illinois. On January 16, 2014, it was announced that plaintiff's name would appear first on the Democratic gubernatorial primary ballot. That same day, Flannery, the political editor for Fox Chicago WFLD, interviewed plaintiff for a segment that was to air during WFLD's 9 p.m. news broadcast. As part of the programming, a WFLD web producer, Katie Fraser, wrote an article for WFLD's website that was published under Flannery's byline titled "Controversial candidate remains on primary ballot for governor." The web article stated, in part, "Tio Hardiman told FOX 32 that a judge last month expunged from his record Hardiman's 1999 guilty plea and conviction for misdemeanor domestic violence, a charge filed by a former wife." The web article was originally posted to WFLD's website at 8:21 p.m.

¶ 11 Additionally, Kane, WFLD's producer, wrote a teaser for Flannery's 9 p.m. segment that was read on-air by WFLD news anchor Jeff Herndon at 9:11 p.m. The teaser stated, "Also, a former gang member who was once accused of beating his wife wants to be your governor.

Why he says voters shouldn't be concerned about his domestic violence conviction." Plaintiff's name was not mentioned in the teaser, and it ran only one time.

¶ 12    After the teaser aired and before Flannery's segment, Flannery purportedly asked Kane whether she knew that plaintiff was a former gang member and whether she may have confused him with someone else. Flannery's segment aired between 9:14 p.m. and 9:16 p.m. At some point after Flannery's segment aired, plaintiff called WFLD and told a Fox newsroom employee that he was not a former gang member, but he did not mention the domestic violence conviction statement made in the teaser. During the same news broadcast, at 9:49 p.m., WFLD clarified on-air that plaintiff "says he has worked closely with gang members but says he himself has never been in a gang." Later that evening, plaintiff saw the web article. He called Flannery to ask him to retract the commentary about the domestic violence conviction. Two days later, after plaintiff gave Flannery further information, WFLD updated the web article to state "Hardiman said that after he pleaded guilty to domestic violence in 1999, a judge sentenced him to probation, with the condition that if he committed no further offenses there would not be a conviction listed on his record."

¶ 13    On December 5, 2014, plaintiff initiated this action against Flannery and Fox.[1] On February 23, 2017, plaintiff filed a second amended complaint, the operative complaint in this appeal, adding Aslam (a now-former WFLD executive producer), Fraser, and Kane as defendants.[2] The second amended complaint asserted claims of defamation, "libel on the internet," false light invasion of privacy, "false light invasion of privacy on the internet," reckless infliction of emotional distress, "reckless infliction of emotional distress on the internet," and libel *per se*. Plaintiff's defamation claim alleged that defendants falsely stated that plaintiff was a former gang member and that he had been convicted of domestic violence in 1999 (count I). Plaintiff alleged that Flannery "in his capacity as news political editor was responsible for the decision to broadcast that the Plaintiff was a former gang member and had been convicted of domestic violence." Plaintiff further alleged that Flannery told plaintiff after the broadcast that a WFLD producer decided to include the statement that plaintiff was a former gang member even though Flannery told the producer that there was no evidence that plaintiff was ever a gang member. Plaintiff's libel on the Internet claim alleged that the web article, posted under Flannery's byline, falsely stated that plaintiff was convicted of domestic violence, falsely stated that plaintiff had told defendants that a judge expunged his record for a conviction on domestic violence, and falsely stated that plaintiff told defendants that he pleaded guilty to domestic violence and that defendants knew those statements were false (count II). Counts I and II asserted that defendants "knowingly, unlawfully, wrongfully, intentionally, maliciously, contrived [*sic*] and desired to injure and destroy the [p]laintiff's good name" and that defendants' false statements injured his reputation and caused him to lose "thousands of votes in the March 2014, primary for governor, and the support and contributions of *** [certain identified] supporters who were prepared to donate to the [p]laintiff's campaign." Plaintiff's false light invasion of privacy claims alleged that defendants' false and defamatory statements placed plaintiff in a false light (counts III and IV).

_____

[1]Plaintiff initially named Fox TV Stations and WFLD News as defendants, but the proper defendant was Fox Television Stations, LLC. For simplicity, we refer to Fox as the proper defendant.

[2]Plaintiff also changed "Fox TV Stations" to "Fox Television Stations, LLC." Plaintiff continued to list "WFLD News" as a defendant, although it does not appear that WFLD News is an entity separate from Fox Television Stations, LLC.

- 4 -

Plaintiff's reckless infliction of emotional distress claims alleged that defendants' conduct in making the allegedly defamatory statements "was so extreme and outrageous, that it exceeded all possible bounds of decency" and that defendants "knew that the statements that [p]laintiff was 'a former gang member who was convicted of domestic violence', [*sic*] would cause [p]laintiff severe emotional distress" (counts V and VI). Finally, plaintiff's libel *per se* claim asserted that defendants' statement that plaintiff was convicted of domestic violence is actionable *per se* (count VII). For each count, plaintiff sought general, punitive, and exemplary damages, as well as attorney fees and costs.

¶ 14 Aslam, Fraser, and Kane moved to dismiss the second amended complaint pursuant to section 2-619 of the Code of Civil Procedure (Code). 735 ILCS 5/2-619 (West 2016). They argued that plaintiff's claims against them, asserted for the first time in February 2017, did not relate back to the initial complaint. They argued that they did not receive notice of commencement of this action during the one-year limitations period applicable to defamation and false light claims in section 13-201 of the Code (*id.* § 13-201), which expired in January 2015. Aslam, Fraser, and Kane each filed supporting affidavits in which they averred that they did not learn of the lawsuit until late 2015 or 2016. They argued, therefore, that plaintiff's claims against them were barred by the one-year statute of limitations. All defendants moved to dismiss plaintiff's reckless infliction of emotional distress claims pursuant to section 2-615 of the Code. *Id.* § 2-615.

¶ 15 In addition to the motions to dismiss, all defendants moved for summary judgment on plaintiff's second amended complaint. With respect to the former gang member statement, defendants argued that plaintiff failed to identify any special damages to support a claim for defamation *per quod*. Plaintiff only alleged that he lost potential votes without any further specificity and that his political campaign, "Hardiman for Illinois," lost promised campaign contributions, which defendants argued were too speculative and uncertain to constitute special damages. With respect to the statements that plaintiff was convicted of and pleaded guilty to domestic violence, defendants argued that those statements were substantially true "as they capture the 'gist and sting' of the undisputedly true fact that [p]laintiff pled guilty to battering his ex-wife Felecia Hardiman in 1999." Although plaintiff claimed that he pleaded guilty to simple battery against his wife, defendants argued that was a distinction without a difference, as domestic battery is simple battery committed against a family or household member. Furthermore, defendants argued that the statement that plaintiff was convicted of domestic violence, even if technically inaccurate, was substantially true because plaintiff had pleaded guilty to charges of battering his wife and had thus assumed the responsibility for the consequences of his conduct. Defendants further asserted that plaintiff was a public figure and could not establish by clear and convincing evidence that defendants acted with actual malice in making either the former gang member statement or the domestic violence statements.

¶ 16 All of the motions were fully briefed and argued. On August 21, 2017, the circuit court entered a handwritten order (1) granting Aslam, Fraser, and Kane's motion to dismiss based on the statute of limitations; (2) dismissing plaintiff's reckless infliction of emotional distress claims for failure to state a claim (counts V and VI); (3) granting defendants' motion for summary judgment on all of plaintiff's defamation and false light claims (counts I through IV

and V); and (4) denying all other pending motions.[3] The circuit court's order provides that the bases for its decisions were "stated in open court on the record." On December 5, 2017, after briefing and a hearing, the circuit court denied plaintiff's timely filed motion to reconsider. Plaintiff filed a timely notice of appeal.

¶ 17                                                II. ANALYSIS

¶ 18        Plaintiff's overarching argument on appeal is that the circuit court improperly granted summary judgment in favor of defendants on his defamation claims because there were genuine issues of material fact as to whether defendants acted with actual malice when they stated that plaintiff had been convicted of domestic violence and that he was a former gang member.[4] We find that defendants were entitled to summary judgment on plaintiff's claims related to defendants' domestic violence statements because those statements were substantially true and therefore not defamatory. We further find that defendants were entitled to summary judgment on plaintiff's claims related to defendants' former gang member statement because plaintiff failed to identify any genuine issue of material fact as to whether he suffered any special damages or that defendants acted with actual malice.

¶ 19        Summary judgment is appropriate if the pleadings, depositions, affidavits, and other admissions on file establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Id.* § 2-1005(c); *Cohen v. Chicago Park District*, 2017 IL 121800, ¶ 17. The purpose of summary judgment is not to try a question of fact but rather to determine whether one exists. *Robidoux v. Oliphant*, 201 Ill. 2d 324, 335 (2002). "In determining whether a genuine issue as to any material fact exists, a court must construe the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the opponent." *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43 (2004). "A triable issue precluding summary judgment exists where the material facts are disputed, or where, the material facts being undisputed, reasonable persons might draw different inferences from the undisputed facts." *Id.* Our review of a summary judgment order is *de novo*. *Id.* We review a circuit court's judgment, not its reasoning, and we may therefore affirm the circuit court's judgment on any basis supported by the record. *Rodriguez v. Sheriff's Merit Comm'n of Kane County*, 218 Ill. 2d 342, 357 (2006).

¶ 20                              A. The Domestic Violence Statements

¶ 21        We begin with defendants' statements that plaintiff pleaded guilty to and was convicted of domestic violence. Plaintiff argues that he was never convicted of domestic violence but instead pleaded guilty to simple battery. He argues that his guilty plea was expunged and that a conviction for domestic battery cannot be expunged. We conclude that defendants' statements are not actionable because the statements were substantially true.

---

[3]Those motions, which are not at issue on appeal, include plaintiff's cross-motion for summary judgment and the parties' cross-motions to strike various summary judgment affidavits.

[4]Plaintiff does not raise any specific argument on appeal related to his false light invasion of privacy claims or his reckless infliction of emotional distress claims. He has therefore forfeited any arguments related to those claims. Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018) ("Points not argued are forfeited ***.").

- 6 -

¶ 22    The "gist or sting" of defendants' statements that plaintiff "was once accused of beating his wife" and had a "conviction for misdemeanor domestic violence" are substantially true. At his deposition in this matter, plaintiff acknowledged that in 1999, he pleaded guilty to simple battery against his wife. While plaintiff insists that he pleaded guilty to simple battery rather than domestic violence, the term "domestic violence" denotes some form of physical abuse against a household or family member. There is no serious question that simple battery against one's spouse is an act of domestic violence. Section 12-3 of the Criminal Code of 1961 provided, "A person commits battery if he intentionally or knowingly without legal justification and by any means, (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual." 720 ILCS 5/12-3 (West 1998). Our supreme court has explained that "[t]he difference between simple battery and domestic battery is that the latter is committed against a 'family or household member as defined in subsection (3) of Section 112A-3 of the Code of Criminal Procedure of 1963, as amended.' " *People v. Wilson*, 214 Ill. 2d 394, 396 (2005); compare 720 ILCS 5/12-3 (West 1998), with *id.* § 12-3.2. The definition of "family or household member" in section 112A-3 of the Code of Criminal Procedure of 1963 includes spouses and former spouses. 725 ILCS 5/112A-3(3) (West 1998). Simple battery against a spouse fits within the legal definition of domestic battery, both of which constitute an act of domestic violence.

¶ 23    Furthermore, it is undisputed that a guilty plea and conviction both result in a criminal defendant's culpability for a criminal act. Here, plaintiff pleaded guilty to an act of battery against his wife. Although plaintiff testified at his deposition that he "got [his] record expunged," the record does not confirm that the battery conviction was expunged, and plaintiff admitted to pleading guilty to battery against his wife in 1999. Even accepting as true that the 1999 battery conviction was expunged and that defendants used an incorrect legal term to describe the current status of the 1999 disposition of those criminal charges, any discrepancies did not meaningfully alter the uncontroverted fact that plaintiff pleaded guilty to and acknowledged his criminal culpability for an act of battery against his wife. We find that defendants' statements that plaintiff was "accused of beating his wife" and was "convicted of misdemeanor domestic violence" were substantially true and therefore cannot form the basis of a defamation *per se* claim. The circuit court properly entered summary judgment in favor of defendants on plaintiff's claims related to defendants' statements that plaintiff was convicted of domestic violence.

¶ 24                              B. The Former Gang Member Statement

¶ 25    The teaser statement that plaintiff was a former gang member, however, was not substantially true and was in fact false. The former gang member statement is not actionable *per se*, as it does not fall within any recognized category of statements that are defamatory *per se*. See *supra* ¶ 4. Defendants do not contest whether plaintiff could establish the defamatory meaning of the former gang member statement for the purposes of a claim of defamation *per quod*. Instead, defendants argue that plaintiff could not prevail on a defamation *per quod* claim because he could not establish either special damages resulting from the former gang member statement or that defendants acted with actual malice. We agree with defendants.

### 1. Special Damages

Plaintiff relies on two allegations in his second amended complaint to support his argument that he sufficiently pleaded special damages (*i.e.*, actual damages of a pecuniary nature) to support a claim for defamation *per quod*. First, plaintiff alleged that he "lost thousands of votes in the March 2014, [*sic*] primary for governor, and the support and contributions" of certain identified supporters "who were prepared to donate to the [p]laintiff's campaign." Second, he alleged that he lost a $500 honorarium for a speaking engagement at North Park University. We are not convinced. Clearly, plaintiff's allegation that he "lost thousands of votes in the March 2014, primary" is not an allegation of a pecuniary loss, and any allegation that plaintiff suffered a pecuniary loss as a result of losing the primary election is simply too speculative to support a claim for defamation *per quod*. Second, plaintiff stated at his deposition that he lost the $500 honorarium for a speaking engagement at North Park University because of the domestic violence statements; he did not testify that the former gang member statement caused him to lose the honorarium, and he did not offer any other evidence to show that the former gang member statement caused him a pecuniary loss to meet the pleading and proof requirements of a defamation *per quod* claim. Therefore, plaintiff did not identify or establish any facts tending to show that he suffered a pecuniary loss as a result of the former gang member statement.

We further observe that plaintiff's second amended complaint alleged that he lost over $200,000 in pledged campaign contributions as a result of defendants' domestic battery statements. Plaintiff does not direct our attention to any portion of the record to establish that financial support for his campaign was withdrawn as a result of the former gang member statement. Furthermore, in his reply brief to this court, plaintiff asserts that the contributions his gubernatorial campaign lost "are still damages that affected [plaintiff] personally." Plaintiff, however, cites no authority to support his assertion, whereas defendants cite section 9-6(c) of the Election Code (10 ILCS 5/9-6(c) (West 2016)) to defeat this assertion. Section 9-6(c) of the Election Code states, "All funds of a political committee shall be segregated from, and may not be commingled with, any personal funds of officers, members, or associates of such committee." *Id.* We find that the loss of monetary contributions to plaintiff's political campaign fund—money to which plaintiff had no individual right and which he was prohibited from receiving personally—are not actual damages of a pecuniary nature suffered by plaintiff individually and do not equate to special damages incurred by an individual plaintiff as required in an action for defamation *per quod*.

### 2. Actual Malice

But even assuming *arguendo* that plaintiff could establish that the former gang member statement was defamatory and that the loss of votes or the loss of an honorarium constitutes special damages, plaintiff did not come forward with any evidence to show that the former gang member statement was made with actual malice. Where plaintiff is a public figure—which is undisputed in the case before us—he "may not obtain redress in a libel action unless he proves that the allegedly defamatory statements were made with actual malice." *Costello*, 125 Ill. 2d at 418-19 (citing *New York Times Co.*, 376 U.S. 254). In order to defeat defendant's motion for summary judgment, plaintiff was required to establish facts tending to show by clear and convincing evidence that defendants either (1) knew that the former gang member statement was false, (2) had a high degree of awareness that their statement was

probably false, or (3) entertained serious doubts about the truth of the statements made. *Jacobson v. CBS Broadcasting, Inc.*, 2014 IL App (1st) 132480, ¶ 36.

¶ 31 Plaintiff did not identify any facts to show that there was a genuine issue of material fact as to whether Kane, at the time she wrote the teaser, or Fox, at the time the teaser was read on air, knew that the former gang member statement was false, that they had a high degree of awareness that the statement was probably false, or that they entertained serious doubts as to the truth of the statement. At her deposition, Kane testified that she based the former gang member statement on previous WFLD interviews with plaintiff in which he claimed to have inside knowledge of gang activity and how gangs work, that he claimed to be an expert on street life, and that he had interviewed gang members. Kane further testified that she believed that plaintiff was a former gang member based on his area of expertise. It was not until after the teaser ran, when Flannery asked Kane whether she was sure that plaintiff was a former gang member, that Kane worried that she might have confused plaintiff with someone else. Plaintiff did not come forward with any facts to contradict Kane's deposition testimony or any other facts tending to show that Kane was aware when she wrote the teaser that the statement was probably false or that she entertained any serious doubts as to its truth. Plaintiff offered no contrary testimony or counteraffidavits to put this testimony at issue. In the face of a motion for summary judgment by defendants showing that some element of the case must be resolved in their favor or that there was an absence of evidence to support plaintiff's case, it was incumbent on plaintiff to come forward with some factual basis that would defeat plaintiff's motion for summary judgment. *Nedzvekas v. Fung*, 374 Ill. App. 3d 618, 624 (2007). Here, plaintiff failed to do so, and thus failed to demonstrate the existence of any genuine issue of material fact as to whether Kane or Fox acted with actual malice.

¶ 32 Furthermore, there was no evidence that Kane discussed the teaser with Flannery or any of the other individual defendants before the teaser aired. Flannery stated at his deposition that he was not aware of the teaser until after it aired, and plaintiff does not direct our attention to any facts in the record to contradict Flannery's statement. Nor does plaintiff identify any facts in the record to show that Aslam or Fraser had any knowledge of or participation in creating the teaser. Plaintiff therefore cannot establish that Flannery, Aslam, or Fraser acted with actual malice with respect to the former gang member statement. The circuit court therefore properly entered summary judgment in favor of all defendants with respect to plaintiff's claims arising from defendants' statement that plaintiff was a former gang member.

¶ 33 As we have concluded that defendants were entitled to summary judgment on plaintiff's defamation claims, we need not address plaintiff's remaining argument on appeal as to whether the circuit court properly granted Aslam, Fraser, and Kane's motion to dismiss based on the statute of limitations because, regardless of whether they were proper defendants, they were entitled to judgment as a matter of law on plaintiff's complaint.

¶ 34                                          III. CONCLUSION
¶ 35 For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 36 Affirmed.