Rockingham
No. 2010-343

# DAVID J. LOVEJOY

v.

# JAMES DANIEL LINEHAN & a.

Argued: November 17, 2010
Opinion Issued: February 23, 2011

484

*Douglas, Leonard & Garvey, P.C.*, of Concord (*Charles G. Douglas, III* and *Jason R.L. Major* on the brief, and *Mr. Douglas* orally), for the plaintiff.

*Orr & Reno, P.A.*, of Concord (*Michael D. Ramsdell* on the brief and orally), for defendant James Daniel Linehan.

*McNeill, Taylor & Gallo, P.A.*, of Dover (*R. Peter Taylor* on the brief and orally), for defendant Mark Peirce.

*Sheehan Phinney Bass + Green, P.A.*, of Manchester (*Christopher Cole* and *Elizabeth A. Bailey* on the memorandum of law), for defendant Rockingham County.

*Malloy & Sullivan*, of Manchester, for defendant Karen Dandurant, filed no brief.

HICKS, J. The plaintiff, David J. Lovejoy, appeals an order of the Superior Court (*Nicolosi*, J.) dismissing his claim for invasion of privacy by public disclosure of private facts against defendants James Daniel Linehan and Mark Peirce. We affirm.

The following facts are recited in the trial court's order or are supported by the record. This case arises out of the 2009 election for Rockingham County Sheriff in which the plaintiff challenged Linehan, the incumbent. Peirce was a deputy sheriff and Linehan's second-in-command.

On October 27, 2008, the *Portsmouth Herald* published an article written by defendant Karen Dandurant that contained the following: "A record

provided to the Herald said Lovejoy was involved in a case of simple assault and was convicted in 1989. Lovejoy said the case was annulled and was thrown out of court by the judge."

The plaintiff brought suit against Linehan, Peirce, Dandurant and Rockingham County, which was alleged to be responsible for the actions of Linehan and Peirce, its employees, under the doctrine of *respondeat superior*. The amended complaint alleges that Linehan and Peirce, assisted by other county employees, prepared "documents containing information about the plaintiff's annulled conviction." Linehan and Peirce then allegedly provided the "annulled criminal record to Ms. Dandurant for a story they knew she was writing for the Portsmouth Herald."

The complaint alleged a number of counts against the various defendants, only one of which is relevant here: Count II alleged a claim against all defendants for invasion of privacy by public disclosure of private facts. It alleged that such disclosure "put the plaintiff in a position of having to publicly discuss a matter that the legislature has declared private, confidential, and prohibited from publicity under RSA 651:5."

Linehan, Peirce and Dandurant moved to dismiss count II for failure to plead sufficient facts on which to obtain relief, which the trial court granted. On appeal, the plaintiff moved to nonsuit Dandurant with prejudice. We denied the motion without prejudice to the plaintiff seeking relief in the trial court and remanded for that limited purpose. We now review the plaintiff's claims against Linehan and Peirce under the following standard: "We must, as the trial court was required to, determine whether the allegations in the plaintiff's pleadings are reasonably susceptible of a construction that would permit recovery." *Provencal v. Vermont Mut. Ins. Co.*, 132 N.H. 742, 744-45 (1990) (quotation and brackets omitted).

> We assume the [plaintiff's] pleadings to be true and construe all reasonable inferences in the light most favorable to [him]. We then engage in a threshold inquiry that tests the facts in [his] petition against the applicable law, and if the allegations constitute a basis for legal relief, we must hold that it was improper to grant the motion to dismiss.

*McNamara v. Hersh*, 157 N.H. 72, 73 (2008) (citation omitted).

■ In *Hamberger v. Eastman*, 106 N.H. 107 (1964), we recognized that "invasion of the right of privacy is not a single tort but consists of four distinct torts," including: "(1) intrusion upon the plaintiff's physical and mental solitude or seclusion; (2) public disclosure of private facts; (3) publicity which places the plaintiff in a false light in the public eye; (4) appropriation, for the defendant's benefit or advantage, of the plaintiff's

name or likeness." *Hamberger*, 106 N.H. at 109, 110. We deal here with the public disclosure form of the tort, which "involves the invasion of something secret, secluded or private pertaining to the plaintiff." *Karch v. Baybank FSB*, 147 N.H. 525, 535 (2002) (quotation omitted).

As set forth in the RESTATEMENT (SECOND) OF TORTS:

> One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that
>
> > (a) would be highly offensive to a reasonable person, and
> > (b) is not of legitimate concern to the public.

RESTATEMENT (SECOND) OF TORTS § 652D (1977). The trial court ruled that the plaintiff's claim failed as a matter of law because "the disclosures concerning the annulled conviction addressed a matter of legitimate public concern."

On appeal, the plaintiff contends that the trial court erred in concluding that his annulled conviction was not private and was a matter of legitimate public concern. He argues: "[G]iven the legislative and judicial policy determinations inherent in the annulment of a criminal record, and the existence of a criminal sanction for disclosure of an annulled record, a more serious and meaningful definition of a 'private fact' would be hard to imagine." The plaintiff's argument relies upon the statutory provision regarding annulment of criminal records, RSA 651:5 (2007 & Supp. 2010). Therefore, we examine the relevant portions of that statute.

RSA 651:5 provides, in part, that upon the entry of an annulment order, "[t]he person whose record is annulled shall be treated in all respects as if he had never been arrested, convicted or sentenced, except" in certain circumstances not relevant to this appeal. RSA 651:5, X(a) (2007). The statute further provides that "[a] person is guilty of a misdemeanor if, during the life of another who has had a record of arrest or conviction annulled pursuant to this section, he discloses or communicates the existence of such record except as provided in subparagraph XI(b)." RSA 651:5, XII (2007).

The plaintiff argues that pursuant to RSA 651:5, he "had the expectation that his criminal conviction was effectively erased from any possibility of further public discourse." Linehan counters that "RSA 651:5 does not include a private cause of action, and therefore, the statute did not create an actionable privacy interest." Peirce similarly argues that "[a]n annulment under RSA 651:5 does not expressly turn the public event of a criminal conviction into a 'private, secret, or secluded fact.'" We agree.

While RSA 651:5, XII imposes criminal liability on one who discloses an annulled record, the statute does not provide a civil remedy to the person whose record is disclosed. Moreover, the statute provides that "[t]he *person* whose record is annulled shall be treated in all respects as if he had never been arrested, convicted or sentenced"; it does not enshroud the record itself with a cloak of secrecy. RSA 651:5, X(a) (emphasis added). As Peirce argues:

> The [plaintiff] essentially contends that an annulled conviction must be treated under RSA 651:5 as if it had never occurred. This conceptually impossible position has not only been rejected by other states, it is also contrary to the clear language of the statute . . . [which] describes various circumstances in which the annulled record can be used.

(Citation omitted.) *Cf. Eagle v. Morgan,* 88 F.3d 620, 626 (8th Cir. 1996) (noting that the Arkansas legislature does not "possess the Orwellian power to permanently erase from the public record those affairs that take place in open court" and expressing "doubt [that] this was the [legislature's] intention . . . [when the statute itself provides that] an expunged conviction can be used for certain purposes"); *Nilson v. Layton City,* 45 F.3d 369, 372 (10th Cir. 1995) (noting that "[a]n expungement order does not privatize criminal activity. While it removes a particular arrest and/or conviction from an individual's criminal record, the underlying object of expungement remains public . . . [and therefore an expunged record] is not entitled to privacy protection.").

The plaintiff nevertheless argues that *United States Department of Justice v. Reporters Committee for Freedom of the Press,* 489 U.S. 749 (1989), supports his claim that he has a privacy interest in his annulled criminal record that is not overcome by a legitimate public concern in that record. He asserts that while the Supreme Court recognized that "there is undoubtedly some public interest in anyone's criminal history, especially if the history is in some way related to the subject's dealing with a public official or agency," it held "that a third party's request for law enforcement records *or* information about a private citizen can reasonably be expected to invade that citizen's privacy." *Reporters Committee,* 489 U.S. at 774, 780. *Reporters Committee,* however, is inapposite in a number of respects. First, it dealt with "[t]he question of the statutory meaning of privacy under the [Freedom of Information Act, *see* 5 U.S.C. § 552 (b)(7)(C) (2006)]," which the Supreme Court noted "is, of course, not the same as the question whether a tort action might lie for invasion of privacy." *Id.* at 762 n.13. In addition, as Peirce argues, "[t]he circumstances in the *Reporters Committee* case are fundamentally different . . . [because] the individual whose

criminal records were at issue was not running for public office." Rather, the individual "allegedly had improper dealings with a corrupt Congressman," but was himself a private citizen. *Id.* at 774.

■■ Here, the plaintiff was a candidate for public office. Linehan argues, therefore, that when he entered the county sheriff election race, the plaintiff "not only opened himself up to the disclosure of otherwise private facts, but also rendered his annulled assault conviction a matter of legitimate public concern." We agree.

> [A] candidate's decision to apply for an elected public office places his or her qualifications for that office at issue, and, consequently, requires members of the public, either individually or through their representatives, to evaluate the particular candidate. Thus, a candidate voluntarily seeking to fill an elected public office has a diminished privacy expectation in personal information relevant to that office.

*Lambert v. Belknap County Convention,* 157 N.H. 375, 384 (2008) (action under State's Right-to-Know Law). Moreover, "[t]he public has a significant interest in knowing the candidates under consideration for that office." *Id.* In balancing those interests in *Lambert,* we concluded "that the public's interest in disclosure significantly outweighs the privacy interests of the candidates." *Id.* at 385.

■■ Our task here is to determine whether the plaintiff's annulled record is a matter of legitimate public concern for purposes of the tort of invasion of privacy by public disclosure of private facts. We conclude that it is. As stated in *Summe v. Kenton County Clerk's Office,* 626 F. Supp. 2d 680, 692 n.8 (E.D. Ky. 2009), *aff'd in part,* 604 F.3d 257 (6th Cir. 2010), "The qualifications of a candidate for public office is an area of legitimate concern to the public and, therefore, a candidate loses his or her privacy right to this information." In determining whether the plaintiff's annulled conviction was relevant to his qualifications for the county sheriff position, we note that in New Hampshire, "the sheriff maintains his common law powers, duties and responsibilities as chief law enforcement officer of the county." *Linehan v. Rockingham County Comm'rs,* 151 N.H. 276, 283 (2004). We conclude that a prior assault conviction, whether subsequently annulled or not, is relevant to the qualifications for that position. *Cf. Santillo v. Reedel,* 634 A.2d 264, 266 (Pa. Super. Ct. 1993) (finding fact that complaint of sexual abuse of a minor had been made against candidate for public office of district justice was matter of legitimate public concern; where the appellant "sought a position that would enable him to judge the conduct of others and

determine whether that conduct was in conformity with the law[,] [a] claim that he violated the law was relevant and newsworthy").

We note, as did the trial court, that RSA 651:5 itself recognizes that an annulled conviction is relevant to determining a person's fitness for a law enforcement position. RSA 651:5, XI(b) provides that nothing in RSA 651:5 shall affect any right:

> (b) Of law enforcement officers to maintain arrest and conviction records and to communicate information regarding the annulled record of arrest or conviction to . . . the police standards and training council solely for the purpose of assisting the council in determining the fitness of an individual to serve as a law enforcement officer, in any of which cases such information shall not be disclosed to any other person.

RSA 651:5, XI(b) (2007). The plaintiff takes issue with the trial court's reference to RSA 651:5, XI(b), arguing that the court, by quoting only a portion of the provision, "overlooked the statute's unambiguous language regarding *to whom* such annulled information may be provided." The plaintiff also argues that "[t]he trial court erred by judicially expanding the exceptions to nondisclosure provided by the New Hampshire legislature under RSA 651:5," thereby "ignor[ing] the familiar axiom of statutory construction that provides the expression of one thing in a statute implies the exclusion of another." (Quotations omitted.)

The plaintiff misconstrues the trial court's order. The court did not purport to apply RSA 651:5, XI(b) to the case at hand, and therefore neither ignored the language of, nor expanded, the statutory exceptions. Rather, the court relied upon the statute's implicit acknowledgment of the relevance of a person's annulled conviction to the person's qualifications for a law enforcement position. That legislative acknowledgement is merely additional support for the obvious point, recognized elsewhere, that a person's prior violation of the law is relevant to assessing his fitness to enforce it. *See Santillo*, 634 A.2d at 266. We therefore find no error in the trial court's citation of RSA 651:5, XI(b) to support its conclusion that because the "Plaintiff sought to obtain, via public election, the position of chief law enforcement officer, . . . [the] Plaintiff's annulled conviction was, as a matter of law, of legitimate public concern."

Finally, the plaintiff argues that "[t]he trial court erred by failing to appreciate the distinction between the *publication* of a news story about the defendant's unlawful disclosure of the plaintiff's annulled conviction, and the actual unlawful *disclosure* of that protected, private information by the defendants in the first instance." Because we have found the annulled

conviction to be a matter of legitimate public concern, the plaintiff's claim fails as a matter of law, and we therefore need not address the publicity element of the tort. *See* RESTATEMENT (SECOND) OF TORTS, *supra.*

We also need not address the constitutional issues raised by Peirce, as we have disposed of the issues on nonconstitutional grounds. *See Britton v. Town of Chester*, 134 N.H. 434, 441 (1991). Lastly, we dismiss as moot the plaintiff's motion to strike the appendix to Linehan's brief as we did not rely upon any of the documents contained therein, and we grant Linehan's assented-to motion to submit late authority.

*Affirmed.*

DALIANIS, C.J., and DUGGAN and CONBOY, JJ., concurred.