NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Grafton
No. 2015-0536


GRAFTON COUNTY ATTORNEY'S OFFICE

v.

ELIZABETH CANNER & a.

Argued: March 3, 2016
Opinion Issued: August 23, 2016


Lara J. Saffo, county attorney, on the brief, for the Grafton County Attorney's Office.


Prince Lobel Tye LLP, of Boston, Massachusetts (Robert A. Bertsche on the brief and orally), for Elizabeth Canner.


DesMeules, Olmstead & Ostler, of Norwich, Vermont (George H. Ostler on the brief, and Cabot R. Teachout orally), for John Doe.


Gallagher, Callahan & Gartrell, P.C., of Concord (Charles P. Bauer on the memorandum of law), for Town of Hanover/Hanover Police Department.

BASSETT, J.  John Doe appeals an order of the Superior Court (MacLeod, J.) ruling in favor of Elizabeth Canner.  Canner requested, under the New Hampshire Right-to-Know Law, RSA chapter 91-A (2013 & Supp. 2015), access to records relating to Doe's arrest and prosecution.  Prior to the filing of Canner's Right-to-Know requests, Doe had filed a petition for annulment under RSA 651:5 (2016).  While Canner's request was pending, Doe's annulment petition was granted.  The trial court concluded that, notwithstanding the fact that Doe's petition for annulment had been granted, records relating to Doe's arrest and prosecution are not categorically exempt from public inspection under the Right-to-Know Law.  We affirm and remand for further proceedings consistent with this opinion.

This case presents an issue of first impression in New Hampshire: Whether records maintained by arresting and prosecuting agencies pertaining to an annulled arrest and the related prosecution are categorically exempt from public inspection under the Right-to-Know Law.  Resolution of this case requires us to interpret several statutory provisions, including certain provisions of the Right-to-Know Law.  "The ordinary rules of statutory construction apply to our review of the Right-to-Know Law."  CaremarkPCS Health v. N.H. Dep't of Admin. Servs., 167 N.H. 583, 587 (2015) (quotation omitted).  Thus, we are the final arbiter of the legislature's intent as expressed in the words of the statute considered as a whole.  Id.  When examining the language of a statute, we ascribe the plain and ordinary meaning to the words used.  Id.  We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include.  Id.  We also interpret a statute in the context of the overall statutory scheme and not in isolation.  Id.

"Our ultimate goal in construing the Right-to-Know Law is to further the statutory and constitutional objectives of increasing public access to all public documents and governmental proceedings and to provide the utmost information to the public about what its government is up to."  Prof'l Firefighters of N.H. v. Local Gov't Ctr., 159 N.H. 699, 705 (2010) (quotation and citation omitted); see also N.H. CONST. pt. I, art. 8.  "Thus, we construe provisions favoring disclosure broadly, while construing exemptions narrowly."  Prof'l Firefighters of N.H., 159 N.H. at 707 (quotation omitted).  The party arguing for nondisclosure has the burden of proof.  See id.

RSA 91-A:4, I (2013), in relevant part, states:

> Every citizen during the regular or business hours of all public bodies or agencies, and on the regular business premises of such public bodies or agencies, has the right to inspect all governmental records in the possession, custody, or control of such public bodies or agencies, . . . except as otherwise prohibited by statute or RSA 91-A:5.

2

(Emphasis added.) Doe argues that the records relating to his arrest and prosecution are exempt from public inspection under RSA 91-A:4, I, because the annulment statute, RSA 651:5, prohibits their disclosure.

RSA 651:5, I, provides that:

[T]he record of arrest, conviction and sentence of any person may be annulled by the sentencing court at any time in response to a petition for annulment which is timely brought in accordance with the provisions of this section if in the opinion of the court, the annulment will assist in the petitioner's rehabilitation and will be consistent with the public welfare.

Because the purpose of annulment is to reduce the collateral consequences of a criminal arrest and "to afford an offender . . . a chance to start anew without this stigma in his records," State v. Roe, 118 N.H. 690, 692-93 (1978) (quotation omitted), the statute further provides that, "[u]pon entry of an order of annulment . . . [t]he person whose record is annulled shall be treated in all respects as if he or she had never been arrested, convicted or sentenced," RSA 651:5, X(a).

The record reflects the following pertinent facts. In 2013, "John Doe" was indicted by a Grafton County grand jury on multiple felony counts. The Grafton County Attorney's Office prosecuted Doe. Doe was acquitted by a jury on all charges. In April 2014, Doe filed a petition in the Superior Court pursuant to RSA 651:5 to annul the records of his arrest and prosecution. In July 2014, the court granted Doe's petition.

In June 2014, while Doe's petition for annulment was pending, Canner submitted Right-to-Know requests to the county attorney's office and the Hanover Police Department. She sought "any and all documents and information related [to Doe's] [t]rial," as well as documents, audio, and video related to the Hanover Police Department's initial investigation into the allegations against Doe. In response, the county attorney filed a petition for declaratory judgment in the Superior Court seeking a ruling as to whether: (1) given Doe's then-pending petition for annulment, the records requested under the Right-to-Know Law would be exempt from public inspection if the petition were granted; and (2) based upon privacy concerns related to Doe and other persons involved in the case, many of the requested materials would be exempt from public inspection under the Right-to-Know Law. The county attorney noted that neither the annulment statute nor the Right-to-Know Law provided guidance as to "whether the prosecutorial file is available pursuant to [a] Right to Know request after annulment." The Hanover Police Department joined in the county attorney's action. Canner filed an answer and a counterclaim for declaratory judgment.

3

The trial court bifurcated the proceedings before it, and both the county attorney's office and Canner filed cross-motions for partial summary judgment on the threshold issue of whether, after an annulment has been granted, records pertaining to an annulled arrest and its prosecution maintained by arresting and prosecuting agencies are exempt from public inspection under the Right-to-Know Law. The trial court concluded that "RSA 651:5 does not clearly and entirely" exempt records relating to an annulled arrest and the related prosecution from disclosure under the Right-to-Know Law, observing that "RSA 651:5, X(a) treats the person, not the [annulled] record, as if he had never been arrested, and therefore the record is not necessarily 'enshroud[ed] . . . with a cloak of secrecy.'"

The trial court provided two primary reasons for its conclusion. First, it noted that RSA 651:5 "treats prosecutor and police records differently than it treats court records or records in the state [police] criminal records unit." It also observed that, although the annulment statute provides that "court records must be sealed" and that the state police criminal records unit must "remove the annulled criminal record" from its files, "prosecuting and arresting agencies must only clearly identify on the records that the arrest is annulled." Second, the trial court concluded that RSA 651:5, XI(b) does not set forth the only circumstances under which law enforcement officials are permitted to use annulled records but, rather, it provides a "non-exclusive list clarifying law enforcement's rights to disclose information in those circumstances." After observing that its ruling did "not bear any weight on whether an RSA 91-A:5 exemption" might "preclude disclosure [of] John Doe's annulled record on privacy grounds," see RSA 91-A:5, IV (2013) (exempting from disclosure "confidential . . . information" and "files whose disclosure would constitute invasion of privacy"), the trial court ruled that records maintained by arresting and prosecuting agencies relating to an annulled arrest and subsequent prosecution are not categorically exempt from public inspection under the Right-to-Know Law. After Doe's motion for reconsideration was denied, he filed this appeal.

"In reviewing the trial court's rulings on cross-motions for summary judgment, we consider the evidence in the light most favorable to each party in its capacity as the nonmoving party and, if no genuine issue of material fact exists, we determine whether the moving party is entitled to judgment as a matter of law." CaremarkPCS Health, 167 N.H. at 586 (quotation omitted). We review the trial court's application of the law to the facts de novo. Id.

Because the trial court bifurcated the proceedings before it, the narrow question before us is whether records pertaining to Doe's annulled arrest and the related prosecution maintained by arresting and prosecuting agencies are categorically exempt from public inspection pursuant to RSA 91-A:4, I. This is a question of law, which we review de novo. See id. at 586-87. Because Doe

argues for nondisclosure, he has the burden of demonstrating that the records are exempt from public inspection.  See id. at 587.

Doe argues that RSA 651:5, X(a) creates "an express statutory exemption" from the Right-to-Know Law for "arrest and prosecution records that have been annulled by court order."  He also asserts that allowing public access to these records would contravene the plain language of the annulment statute and undermine the purpose of an annulment — to "eliminate the negative consequences of having a criminal record."  Canner counters that the annulment statute "explicitly recognizes various scenarios under which records referencing the underlying criminal proceeding[s] may be disclosed," and that, although the statute requires that courts and the state police criminal records unit make annulled records "inaccessible to the general public," the records of arresting and prosecuting agencies "remain subject to disclosure under the Right to Know Law."  We agree with Canner.

We recently interpreted RSA 651:5, X(a) in a case involving a political candidate who disclosed his opponent's annulled conviction to a newspaper.  See Lovejoy v. Linehan, 161 N.H. 483, 484-85 (2011).  The plaintiff in Lovejoy argued that he "had the expectation that his [annulled] criminal conviction was effectively erased from any possibility of further public discourse," and, therefore, the sharing of his annulled conviction with the media constituted a tortious invasion of privacy.  Id. at 486 (quotation omitted).  We disagreed, explaining that, although RSA 651:5, X(a) provides that "the person whose record is annulled shall be treated in all respects as if he had never been arrested, convicted or sentenced[,] it does not enshroud the record itself with a cloak of secrecy."  Id. at 487 (quotation and brackets omitted).  We observed that treating an annulled conviction as if it had never occurred was "conceptually impossible" and "contrary to the clear language of the statute which describes various circumstances in which the annulled record can be used."  Id. (quotations, brackets, and ellipsis omitted); see RSA 651:5, X(a), (c), XI(b) (identifying circumstances in which annulled records may be considered or disclosed).  Thus, we held that "an annulment under RSA 651:5 does not expressly turn the public event of a criminal conviction into a private, secret, or secluded fact."  Lovejoy, 161 N.H. at 486 (quotations and brackets omitted); see also Panas v. Harakis & K-Mart Corp., 129 N.H. 591, 611 (1987) (observing that annulment statute "only extends as far as evidence of the conviction itself" and that although annulment statute "effectively erases the conviction, no such similar erasure is effected against the facts giving rise to the conviction").

Although Lovejoy did not involve a request under the Right-to-Know Law, and was decided prior to the legislature's repeal of the provision of the annulment statute that made it a misdemeanor to knowingly disclose the existence of an annulled record except under certain circumstances, we find that case instructive.  See RSA 651:5, XII (Supp. 2012); Laws 2012, 249:2 (repealing provision).  As we recently observed, the purpose of an annulment is

to limit the legal effect of a prior arrest rather than to conceal the fact that it occurred.  See Wolfgram v. N.H. Dep't of Safety, 169 N.H. ___, ___ (decided Apr. 29, 2016) ("[A]lthough annulment creates a legal fiction that a person has never been arrested, convicted, or sentenced, prior convictions remain a historical reality and can be considered in limited circumstances.").  We agree with the reasoning of the New Jersey Supreme Court:

> It is true that under [New Jersey's] expungement statute, as a matter of law, an expunged conviction is deemed not to have occurred . . . . [b]ut the expungement statute does not transmute a once-true fact into a falsehood.  It does not require the excision of records from the historical archives of newspapers or bound volumes of reported decisions or a personal diary.  It cannot banish memories.  It is not intended to create an Orwellian scheme whereby previously public information — long maintained in official records — now becomes beyond the reach of public discourse . . . .  Although our expungement statute generally permits a person whose record has been expunged to misrepresent his past, it does not alter the metaphysical truth of his past, nor does it impose a regime of silence on those who know the truth.

G.D. v. Kenny, 15 A.3d 300, 315-16 (N.J. 2011) (quotation and citation omitted).

Here, if we were to accept Doe's interpretation of RSA 651:5, X(a), the result would indeed be "Orwellian."  As the county attorney observed, it would "confuse the public enormously" if the county attorney were required to deny the existence of the prosecutorial file.  Additionally, allowing public access to the records sought by Canner in this case will not subvert the legal fiction created by the annulment statute — that Doe "shall be treated in all respects as if he . . . had never been arrested, convicted or sentenced."  RSA 651:5, X(a).  As the county attorney correctly stated, "if asked if he was arrested, [Doe] could state 'no' in relation to this arrest."  At the same time, allowing the public access to these records will shed light on the government's actions giving rise to Doe's arrest, prosecution, and acquittal.

Other provisions of the annulment statute support the conclusion that records pertaining to an annulled arrest and the related prosecution are not categorically exempt from disclosure pursuant to a Right-to-Know request.  The annulment statute delineates the responsibilities of various agencies and public bodies that maintain annulled records.  See RSA 651:5, X(c)-(e).  Although the statute plainly requires that court records and the records of the state police criminal records unit be "sealed" or "remove[d]," RSA 651:5, X(c)-(d), it provides no such directive to arresting and prosecuting agencies regarding public access to their records, see RSA 651:5, X(e) (providing that police and prosecutors must only "clearly identify" in their records that "the

6

arrest or conviction and sentence have been annulled"). We agree with the trial court that, had the legislature "intended to remove prosecuting and arrest agency records from the public, it could have used language [in RSA 651:5, X(e)] such as that used in RSA 651:5, X(c) [and] (d)." See, e.g., In re Estate of McCarty, 166 N.H. 548, 551 (2014) (observing that if the legislature desired to limit the application of a statute it could have done so explicitly and "we will not add language that the legislature did not see fit to include").

Doe also argues that, because he was acquitted of all charges, the purpose of an annulment — to "eliminate the negative consequences of having a criminal record" — can be achieved only if the "social and economic stigma resulting from having an arrest record and publicly accessible records relating to [his] criminal case" is removed. Thus, he contends that, in cases involving an arrest and a subsequent acquittal, "annulment necessarily requires removing prosecution and police files, as well as court files, from being a matter of public record." (Quotation omitted.) We disagree.

Although, under certain circumstances, the annulment statute differentiates between those individuals who have been acquitted and those who have been convicted, e.g., in relation to the waiting period to petition for annulment and the payment of fees, see RSA 651:5, II, IX, it does not provide for disparate treatment of their records. Rather, for all relevant purposes, the annulment statute prescribes the same rules regarding the use of annulled records, regardless of whether an individual has been acquitted or convicted. See RSA 651:5, X. Nor can we discern a reason why the public's right to "the utmost information . . . about what its government is up to," Prof'l Firefighters of N.H., 159 N.H. at 705 (quotation omitted), should depend upon whether a defendant was acquitted or convicted. The public has a substantial interest in understanding how investigations of alleged crimes are conducted, and how prosecutors exercise their discretion when deciding whether to prosecute, reach a plea agreement, or try cases.

Accordingly, we hold that records maintained by arresting and prosecuting agencies pertaining to an annulled arrest and the related prosecution do not fall under the exemption in RSA 91-A:4, I, for records that are "otherwise prohibited by statute" from public inspection. Thus, they are not categorically exempt from public inspection. Allowing the public to access the records related to Doe's arrest and prosecution will facilitate a more informed public discussion about the decisions made by law enforcement officials and prosecutors. If records of arresting and prosecuting agencies pertaining to an annulled arrest, conviction, or sentence were categorically exempt from public inspection, any citizen wishing to assess or comment upon the actions of the police or the prosecutor in a given case would be unable to examine the primary sources of information — agency records — and, instead, would have to rely upon media accounts. See, e.g., State ex rel. Cincinnati Enq. v. Winkler, 782 N.E.2d 1247, 1250 (Ohio Ct. App. 2002) (Gorman, J.,

dissenting) aff'd, 805 N.E.2d 1094 (Ohio 2004) (expressing concern that the "story of a trial" would "depend on hearsay accounts from secondary sources"). This problem is heightened here by the fact that, as Canner notes, articles regarding Doe's arrest, prosecution, and acquittal "are quickly . . . retrievable by a 'Google' search" for Doe's name.

"Our ultimate goal in construing the Right-to-Know Law is to further the statutory and constitutional objectives of increasing public access to all public documents and governmental proceedings and to provide the utmost information to the public about what its government is up to." Prof'l Firefighters of N.H., 159 N.H. at 705 (quotation and citation omitted). Our holding today advances this important goal: The ability of the public to learn about the decisions of law enforcement officials and prosecutors will not be frustrated merely because a defendant has secured an annulment. Prosecutors "bear responsibility for [a] number of critical decisions, including what charges to bring" and "whether to extend a plea bargain," and the decisions of an individual prosecutor can have a significant impact on the progress of a case. Williams v. Pennsylvania, 136 S. Ct. 1899, 1907 (2016). Because a prosecutor must be publicly accountable for his or her decisions, see Cheney v. United States Dist. Court for D.C., 542 U.S. 367, 386 (2004), the public should have access to information that will enable it to assess how prosecutors exercise the tremendous power and discretion with which they are entrusted. See Morrison v. Olson, 487 U.S. 654, 727-28 (1988) (Scalia, J., dissenting) (explaining that public review of prosecutorial decisions serves as "the primary check" on the "vast power" and "immense discretion" given to prosecutors).

We note that, because the trial court bifurcated the proceedings below, it has yet to decide whether the records related to Doe's arrest and prosecution fall under any other exemption in RSA chapter 91-A, such as RSA 91-A:5, IV which excludes from public inspection attorney work product and other records pertaining to "confidential" information, as well as "files whose disclosure would constitute invasion of privacy." See, e.g., N.H. Right to Life v. Dir., N.H. Charitable Trusts Unit, 169 N.H. ___, ___ (decided June 2, 2016) ("[A]ttorney work product, like communications protected by the attorney-client privilege, falls within the Right-to-Know Law exemption for 'confidential' information."); 38 Endicott St. N. v. State Fire Marshal, 163 N.H. 656, 661 (2012) (records compiled for law enforcement purposes are exempt from disclosure to the extent that their production would constitute an invasion of privacy). Accordingly, our decision today does not resolve the question of whether the records related to Doe's arrest and prosecution ultimately will be available for public inspection under the Right-to-Know Law.

Affirmed and remanded.

DALIANIS, C.J., and HICKS, CONBOY, and LYNN, JJ., concurred.