NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court.

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

Merrimack
No. 2022-0321

AMERICAN CIVIL LIBERTIES UNION OF NEW HAMPSHIRE

v.

NEW HAMPSHIRE DIVISION OF STATE POLICE

Argued: February 14, 2023
Opinion Issued: November 29, 2023

American Civil Liberties Union of New Hampshire, of Concord (Gilles R. Bissonnette and Henry R. Klementowicz on the brief, and Gilles R. Bissonnette orally), for the plaintiff.

John M. Formella, attorney general, and Anthony J. Galdieri, solicitor general (Jessica A. King, assistant attorney general, on the brief and orally), for the defendant.

Wadleigh, Starr & Peters, P.L.L.C., of Manchester (Donna J. Brown and Michael G. Eaton on the brief), for Black Lives Matter Manchester, as amicus curiae.

Malloy & Sullivan, Lawyers Professional Corporation, of Hingham, Massachusetts (Kathleen C. Sullivan and Gregory V. Sullivan on the brief), for Union Leader Corporation and New England First Amendment Coalition, as amici curiae.

HICKS, J. The defendant, the New Hampshire Division of State Police (the Division), appeals an order of the Superior Court (Kissinger, J.) granting the relief sought in a complaint filed by the plaintiff, the American Civil Liberties Union of New Hampshire (ACLU), for access to public records under the Right-to-Know Law. See RSA ch. 91-A (2023). We affirm.

The following facts were recited in the trial court's order or relate the contents of documents in the record. In January 2022, the ACLU filed a Right-to-Know Law complaint against the Division seeking access to records concerning a former state trooper. The complaint alleges that the trooper had been terminated in August 2021 and placed on the exculpatory evidence schedule in September 2021. See Doe v. Attorney General, 175 N.H. 349, 351 n.1 (2022) (describing the exculpatory evidence schedule). It further alleges that the trooper's conduct had given rise to a federal civil rights lawsuit that the Division paid $212,500 to settle on the trooper's behalf.

According to the complaint, the ACLU submitted a Right-to-Know Law request to the Division in August 2021, seeking "[a]ll reports, investigatory files, personnel, and disciplinary records concerning [the former trooper] that relate to any adverse employment action." (Quotation omitted.) The complaint alleges that the Division had "not produced the requested information" and, apparently, "has no intention of doing so in the future." The ACLU filed its complaint seeking the same information.

The Division objected to disclosure, arguing that the requested records are exempt from disclosure under RSA 105:13-b and that their disclosure would constitute an invasion of privacy under RSA 91-A:5, IV. See RSA 105:13-b (2023); RSA 91-A:5, IV. The trial court granted the ACLU's request for disclosure and found the redactions proposed by the ACLU to be appropriate. The court first found that "RSA 105:13-b does not categorically prohibit disclosure of the records at issue in this case under RSA 91-A:4, I." Next, the court conducted the applicable three-step analysis to determine whether disclosure of the requested records would constitute an invasion of privacy under RSA 91-A:5, IV, and concluded that the Division "failed to carry its heavy burden to shift the balance in favor of nondisclosure with respect to the records at issue." See Union Leader Corp. v. Town of Salem, 173 N.H. 345, 355 (2020) (describing the three-step analysis); Reid v. N.H. Attorney Gen., 169 N.H. 509, 527-29 (2016) (explaining the scope of the protected privacy interests and the proper focus of the public interest).

2

On appeal, the Division challenges only the trial court's ruling that RSA 105:13-b does not exempt the police personnel files at issue from disclosure pursuant to RSA 91-A:4, I. Accordingly, "[r]esolution of this case requires us to interpret several statutory provisions, including certain provisions of the Right-to-Know Law." Grafton County Attorney's Office v. Canner, 169 N.H. 319, 322 (2016). "The ordinary rules of statutory construction apply to our review of the Right-to-Know Law." Id. (quotation omitted). "When examining the language of a statute, we ascribe the plain and ordinary meaning to the words used." Id. "We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include." Id. "We also interpret a statute in the context of the overall statutory scheme and not in isolation." Id. "We resolve questions regarding the Right-to-Know Law with a view to providing the utmost information in order to best effectuate the law's statutory and constitutional objectives. Finally, we "will consider legislative history only if the statutory language is ambiguous." Reid, 169 N.H. at 522. Because the statutory language at issue here is unambiguous, we reach our interpretation using "the plain meaning of the words used." Id.

The Right-to-Know Law provision at issue is RSA 91-A:4, I, which provides, in relevant part:

> Every citizen during the regular or business hours of all public bodies or agencies, and on the regular business premises of such public bodies or agencies, has the right to inspect all governmental records in the possession, custody, or control of such public bodies or agencies, including minutes of meetings of the public bodies, and to copy and make memoranda or abstracts of the records or minutes so inspected, except as otherwise prohibited by statute or RSA 91-A:5.

RSA 91-A:4, I (emphasis added). The Division asserts that "RSA 105:13-b is a statute that 'otherwise prohibit[s]' disclosure of government records pursuant to RSA 91-A:4, I." It contends that such records are therefore "categorically exempt from RSA chapter 91-A." For the reasons that follow, we disagree.

RSA 105:13-b, entitled "Confidentiality of Personnel Files," provides:

> I. Exculpatory evidence in a police personnel file of a police officer who is serving as a witness in any criminal case shall be disclosed to the defendant. The duty to disclose exculpatory evidence that should have been disclosed prior to trial under this paragraph is an ongoing duty that extends beyond a finding of guilt.

II. If a determination cannot be made as to whether evidence is exculpatory, an in camera review by the court shall be required.

III. No personnel file of a police officer who is serving as a witness or prosecutor in a criminal case shall be opened for the purposes of obtaining or reviewing non-exculpatory evidence in that criminal case, unless the sitting judge makes a specific ruling that probable cause exists to believe that the file contains evidence relevant to that criminal case. If the judge rules that probable cause exists, the judge shall order the police department employing the officer to deliver the file to the judge. The judge shall examine the file in camera and make a determination as to whether it contains evidence relevant to the criminal case. Only those portions of the file which the judge determines to be relevant in the case shall be released to be used as evidence in accordance with all applicable rules regarding evidence in criminal cases. The remainder of the file shall be treated as confidential and shall be returned to the police department employing the officer.

RSA 105:13-b.

We have recognized that RSA 105:13-b is linked to the prosecutor's duty of disclosure under Brady v. Maryland, 373 U.S. 83, 87 (1963), and State v. Laurie, 139 N.H. 325, 330 (1995). See Petition of State of N.H. (State v. Fuchs), 174 N.H. 785, 791 (2022).[1] In Petition of State (Fuchs), we concluded that "read as a whole, the statute details the procedure for turning over to a criminal defendant any exculpatory or relevant evidence found in the personnel files of any police officer testifying in the criminal case while maintaining the confidentiality of those files for all other purposes." Petition of State (Fuchs), 174 N.H. at 793.

Relying on Petition of State (Fuchs), the Division argues:

[T]he statute prohibits public disclosure of police personnel files to the maximum extent permitted by the United States and New Hampshire Constitutions. RSA 105:13-b mandates the transfer of certain, otherwise confidential personnel information solely for the critical purpose of delivering to criminal defendants the most robust realization of their constitutional right to exculpatory or relevant evidence in a criminal matter. For all other reasons, the police personnel files remain closed to the public.

---

[1] The dissent misreads our decision in Petition of State of N.H. (State v. Fuchs), 174 N.H. 785 (2022). In no respect does this case overrule or diminish its holding.

4

The Division's argument, however, reads into RSA 105:13-b a reference to "public disclosure" that simply is not there. In Petition of State (Fuchs), we emphasized that "[t]he disclosure required under paragraph I is explicitly tied to a particular criminal defendant in a particular criminal case" and that disclosure under paragraph III is similarly "tied to a particular criminal case and is for the explicit purpose of being used as evidence." Id. at 792 (emphases added) (quotation and brackets omitted). Thus, we recognized the limited context in which RSA 105:13-b operates: a specific criminal trial. Indeed, the statute further limits its applicability to a criminal trial in which the police officer whose personnel file is at issue "is serving as a witness" or "serving as a . . . prosecutor." RSA 105:13-b, I, III. The Division's attempt to broaden RSA 105:13-b's application to "public disclosure" violates our canon of statutory construction that we "will not consider what the legislature might have said or add language that the legislature did not see fit to include." Grafton County Attorney's Office, 169 N.H. at 322.

The Division argues, however, that in Provenza v. Town of Canaan, 175 N.H. 121 (2022), we rejected the assertion that "RSA 105:13-b is limited to solely criminal matters and is not applicable in the Right-to-Know context." The Division misreads Provenza. In Provenza, the plaintiff sought to bar release under the Right-to-Know Law of "an investigative report commissioned by the Town as a result of a motor vehicle stop in which he was involved while still employed by the Town as a police officer." Provenza, 175 N.H. at 123. The plaintiff argued, in relevant part, "that RSA 105:13-b creates an exception to the Right-to-Know Law that applies to the Report." Id. at 128. We rejected that argument, noting that "by its express terms, RSA 105:13-b pertains only to information maintained in a police officer's personnel file" and that the plaintiff had not successfully challenged on appeal the trial court's finding that "there is nothing in the record to suggest that the Report is contained in or is a part of [Provenza's] personnel file." Id. (quotations omitted).

Our holding in Provenza does not imply that if the Report had been contained in Provenza's personnel file, it would have been categorically exempt from the Right-to-Know Law by virtue of RSA 105:13-b. We had no need to reach that issue when, as we held, RSA 105:13-b, "by its express terms," did not apply to the requested report on the facts found by the trial court. Id. "We decline to read into [Provenza] conclusions it did not reach." United States v. Segal, 644 F.3d 364, 367 (7th Cir. 2011) (rejecting defendant's argument that a United States Supreme Court case "held that 'defraud,' as used in the mail and wire fraud statutes, means fraud as it was understood at common law," when the case "focused on and reached a conclusion as to only one element of fraud at common law: materiality" and was silent as to the element defendant claimed the case required).

Similarly, no precedent on the issue before us can be found in New Hampshire Center for Public Interest Journalism v. New Hampshire

Department of Justice, 173 N.H. 648, 656 (2020), in which, "[f]or the purposes of th[at] appeal, we assume[d] without deciding that RSA 105:13-b constitutes an exception to the Right-to-Know Law and that it applies outside of the context of a specific criminal case in which a police officer is testifying." N.H. Ctr. for Pub. Interest Journalism, 173 N.H. at 656. Moreover, in Doe v. Attorney General, decided after New Hampshire Center for Public Interest Journalism and Provenza, we reaffirmed that RSA 105:13-b operates within the limited context of a specific criminal trial, concluding that "RSA 105:13-b, II does not authorize the trial court to review the contents of an officer's personnel file outside the scope of a particular criminal case." Doe, 175 N.H. at 354.

The Division further contends that "[t]he process outlined in [RSA 105:13-b] functionally prohibits the public from inspecting the records in police personnel files by limiting inspection to certain, enumerated circumstances." It points to our statement in Petition of State (Fuchs) that "[n]o further dissemination is either required or permitted," Petition of State (Fuchs), 174 N.H. at 792, and asserts that our "case law recognizes that RSA 105:13-b establishes a scheme in which police personnel records may not be disclosed outside the [enumerated] narrow exceptions."

Again, the Division reads meaning into operative language — here, from an opinion of this court — that is not there. The quoted language from Petition of State (Fuchs) means what it says and nothing more: "No further dissemination is either required or permitted." Petition of State (Fuchs), 174 N.H. at 792 (emphasis added). At issue in Petition of State (Fuchs) was whether defendants who had received information under RSA 105:13-b were entitled to thereafter disseminate that information to others, or whether the State was entitled to the issuance of protective orders. See id. at 788. The State had filed motions in the underlying cases seeking protective orders "that would prohibit 'Defense Counsel . . . from sharing or further disseminating these confidential documents and the confidential information contained therein with anyone other than Defense Counsel's staff and the Defendant.'" Id. In interpreting RSA 105:13-b to preclude further dissemination, we reasoned:

> [B]ecause material disclosed under RSA 105:13-b must first be determined to be exculpatory or relevant in a particular criminal case, and then is to be disclosed specifically to the defendant, to interpret the statute to allow disclosure or use beyond the defendant in that particular case would completely destroy the carefully crafted statutory process by which such information is released.

Id. at 794 (emphasis added) (quotation and brackets omitted). Again, our focus was on whether a defendant who had received information under RSA 105:13-b

6

could thereafter share that information with others.  Our decision in <u>Petition of State (Fuchs)</u> says nothing about whether information in a police personnel file independently may be subject to disclosure under a different statute.

The Division next analogizes this case to <u>CaremarkPCS Health v. New Hampshire Department of Administrative Services</u>, 167 N.H. 583 (2015), in which we held that, under the facts of the case, the New Hampshire Uniform Trade Secrets Act (UTSA) provided an exemption from disclosure pursuant to RSA 91-A:4, I.  <u>CaremarkPCS Health</u>, 167 N.H. at 590; <u>see</u> RSA ch. 350-B (2022) (UTSA).  Specifically, we noted that the UTSA "provides remedies for the '[a]ctual or threatened misappropriation' of trade secrets," which includes "'[d]isclosure or use of a trade secret of another without express or implied consent by a person who . . . [a]t the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was . . . acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use.'" <u>CaremarkPCS Health</u>, 167 N.H. at 587, 588 (emphasis omitted) (quoting RSA 350-B:1, II(b), :2, I).  We further noted that Caremark had "specifically marked the designated information as confidential and proprietary," that the contract between Caremark and the New Hampshire Department of Administrative Services (Department) imposed on both parties "a duty of confidentiality not to disclose trade secrets," and that "Caremark did not expressly or impliedly consent to disclosure of the designated information." <u>Id</u>. at 589.  Accordingly, we concluded that "because disclosure of the designated information by the Department would be a misappropriation of Caremark's trade secrets under the UTSA, . . . disclosure of that information is 'prohibited by statute' under RSA 91-A:4, I, and, therefore, we [held] that the designated information [was] exempt from disclosure under RSA 91-A:4, I." <u>Id</u>. at 590.

The Division argues that "[l]ike in <u>Caremark</u> where the UTSA prevented the release of trade secrets, here, RSA 105:13-b prevents disclosure of police personnel files except in limited, enumerated circumstances, pursuant to a process manifestly different from and in conflict with the right of general public inspection provided in RSA 91-A:4, I." The Division's reliance on <u>CaremarkPCS Health</u> is unavailing, however, because there, the UTSA prohibited the Department from releasing the information and thus the disclosure was "otherwise prohibited by statute." We specifically noted that "[t]he UTSA does not prohibit the disclosure of trade secrets under all circumstances; rather, it provides remedies for the '[a]ctual or threatened misappropriation' of trade secrets," <u>id</u>. at 587 (quoting RSA 350-B:2, I), such that disclosure would be contrary to law.  RSA 105:13-b similarly does not prohibit disclosure, in all instances, of information found in police personnel files and it does not further regulate the information.  Thus, it cannot provide a <u>categorical</u> exemption from disclosure under RSA 91-A:4, I.  And while we have interpreted RSA 105:13-b to prohibit further dissemination of information obtained under its procedural framework, the Division cannot avail itself of this prohibition, as it does not hold the records as a result of obtaining them under the statute.  Thus, while

the UTSA applied to the designated information in CaremarkPCS Health to prohibit its disclosure by the Department, the same is not true with respect to RSA 105:13-b and the Division in this case.

Finally, the Division contends that in light of the carefully-drafted statutory framework under which police personnel file information may be obtained under RSA 105:13-b, "disclosing such records pursuant to a public records request would produce an absurd result." It argues:

> Parties in a criminal case could entirely circumvent the protections afforded by statute and gain access to the records via a simple public records request. The absurdity of this result, in which a criminal defendant may have less right to access a police personnel file within the context of his criminal case than as a member of the public seeking the same documents under RSA 91-A, defies the plain statutory language of RSA 105:13-b.

We disagree.

The Right-to-Know Law and RSA 105:13-b serve different purposes. RSA 105:13-b effectuates a criminal defendant's State and Federal Constitutional rights to disclosure of exculpatory evidence and also provides a procedure for obtaining non-exculpatory evidence relevant to the defendant's criminal case. See RSA 105:13-b; Petition of State of N.H. (State v. Theodosopoulos), 153 N.H. 318, 321 (2006) (decided under prior statute) (noting distinction "between exculpatory evidence that must be disclosed to the defendant under the State and Federal Constitutions, and other information contained in a confidential personnel file that may be obtained through the statutory procedure set forth in RSA 105:13-b"). The purpose of the Right-to-Know Law, on the other hand, "is to ensure both the greatest possible public access to the actions, discussions and records of all public bodies, and their accountability to the people." RSA 91-A:1.

We see no absurdity in the coexistence of different statutory frameworks for seeking information in a police personnel file for different purposes. Determining whether information will be disclosed will entail a different inquiry under each framework and the material disclosed under each may not be equivalent. A person seeking disclosure under the Right-to-Know Law would likely be met with a claim of exemption for "personnel . . . files whose disclosure would constitute invasion of privacy." RSA 91-A:5, IV. In that case, after making the requisite preliminary findings, a court would apply the established three-step analysis, as the trial court did here, to determine whether disclosure would constitute an invasion of privacy under RSA 91-A:5, IV. See Reid, 169 N.H. at 527-29 (discussing analysis for determining whether disclosure of a personnel file would constitute an invasion of privacy). First, in determining the privacy interests, the court considers the articulated "public

interest in nondisclosure," and whether disclosure would release personally identifying information or subject an individual to embarrassment or reputational harm. Id. at 529-31 (emphasis omitted). Second, the court evaluates the strength of the public interest as tied to the purpose of the Right-to-Know Law. Id. at 532. The material would be disclosed if, under the third step of the analysis, "the public interest in disclosure" outweighs "the government's interest in nondisclosure and the individual's privacy interest in nondisclosure." Union Leader Corp., 173 N.H. at 355; see Goode v. N.H. Legislative Budget Assistant, 148 N.H. 551, 556, 558 (2002) (concluding trial court erred in ruling that materials were exempt under RSA 91-A:5, IV where "the public's interest in disclosure outweighs the [defendant's] interest in non-disclosure").

A defendant in a criminal case seeking material under RSA 105:13-b, on the other hand, would obtain exculpatory evidence, and, upon making the requisite probable cause showing, would obtain non-exculpatory evidence relevant to his criminal case. See RSA 105:13-b. The material that would be disclosed under each framework — material in which the public interest outweighs the relevant privacy interests under the Right-to-Know Law and material exculpatory and/or relevant to the defendant's criminal case under RSA 105:13-b — is tailored to the purposes of the respective law. That one framework may trigger disclosure of certain material that the other does not — or, as the Division frames it, that "a criminal defendant may have less right to access a police personnel file within the context of his criminal case than as a member of the public seeking the same documents under RSA 91-A" — is, to us, a reflection of the different purposes served by each statutory scheme.

Should the legislature disagree with this court's interpretations of various applications of the exemptions set forth in RSA 91-A:5, IV, including, in this case, our treatment of documents relating to any adverse employment action with respect to the former officer, it may wish to clarify those aspects of records pertaining to law enforcement officers that it intends to be categorically exempt. See Provenza, 175 N.H. at 122-23 (investigative report on officer no longer with department); Union Leader Corp., 173 N.H. at 348 (audit of police department); Seacoast Newspapers v. City of Portsmouth, 173 N.H. 325, 329 (2020) (arbitration decision of police officer's grievance); cf. Petition of State (Fuchs), 174 N.H. at 788 (further disclosure of exculpatory evidence produced in criminal trial).

9

Accordingly, for the foregoing reasons, we affirm the trial court's ruling that RSA 105:13-b does not prohibit disclosure of the records at issue.[2]

Affirmed.

HANTZ MARCONI and DONOVAN, JJ., concurred; ABRAMSON, J., retired superior court justice, specially assigned under RSA 490:3, concurred; BASSETT, J., dissented.

BASSETT, J., dissenting. The defendant, the New Hampshire Division of State Police (the Division), appeals an order of the Superior Court (Kissinger, J.) granting the relief sought in a complaint filed by the plaintiff, the American Civil Liberties Union of New Hampshire (ACLU), for access to records under the Right-to-Know Law that concern a former state trooper. See RSA ch. 91-A (2023). The majority affirms. I respectfully dissent.

The trial court granted ACLU's request for disclosure, ruling that "RSA 105:13-b does not categorically prohibit disclosure of the records at issue in this case under RSA 91-A:4, I." On appeal, the Division challenges the trial court's ruling that RSA 105:13-b does not exempt the police personnel files at issue from disclosure pursuant to RSA 91-A:4, I. Accordingly, "[r]esolution of this case requires us to interpret several statutory provisions, including certain provisions of the Right–to–Know Law." Grafton County Attorney's Office v. Canner, 169 N.H. 319, 322 (2016).

The Right-to-Know Law provision at issue is RSA 91-A:4, I, which provides, in relevant part:

> Every citizen during the regular or business hours of all public bodies or agencies, and on the regular business premises of such public bodies or agencies, has the right to inspect all governmental records in the possession, custody, or control of such public bodies or agencies, including minutes of meetings of the public bodies, and to copy and make memoranda or abstracts of the records or minutes so inspected, except as otherwise prohibited by statute or RSA 91-A:5.

RSA 91-A:4, I (emphasis added). The Division asserts that "RSA 105:13-b is a statute that 'otherwise prohibit[s]' disclosure of government records pursuant to RSA 91-A:4, I." It contends that such records are therefore "categorically

---

[2] To the extent the Division contends that the ACLU and amici have submitted materials that were not in the record before the trial court, we reiterate that our decision is based solely on interpretation of the applicable statutes and we have not considered the materials to which the Division objects.

exempt from RSA chapter 91-A."

RSA 105:13-b, entitled "Confidentiality of Personnel Files," provides:

I. Exculpatory evidence in a police personnel file of a police officer who is serving as a witness in any criminal case shall be disclosed to the defendant. The duty to disclose exculpatory evidence that should have been disclosed prior to trial under this paragraph is an ongoing duty that extends beyond a finding of guilt.

II. If a determination cannot be made as to whether evidence is exculpatory, an in camera review by the court shall be required.

III. No personnel file of a police officer who is serving as a witness or prosecutor in a criminal case shall be opened for the purposes of obtaining or reviewing non-exculpatory evidence in that criminal case, unless the sitting judge makes a specific ruling that probable cause exists to believe that the file contains evidence relevant to that criminal case. If the judge rules that probable cause exists, the judge shall order the police department employing the officer to deliver the file to the judge. The judge shall examine the file in camera and make a determination as to whether it contains evidence relevant to the criminal case. Only those portions of the file which the judge determines to be relevant in the case shall be released to be used as evidence in accordance with all applicable rules regarding evidence in criminal cases. The remainder of the file shall be treated as confidential and shall be returned to the police department employing the officer.

RSA 105:13-b (2023).

We have recognized that RSA 105:13-b is linked to the prosecutor's duty of disclosure under Brady v. Maryland, 373 U.S. 83, 87 (1963), and State v. Laurie, 139 N.H. 325, 330 (1995). See Petition of State of N.H. (State v. Fuchs), 174 N.H. 785, 791 (2022). In Fuchs, we concluded that "read as a whole, the statute details the procedure for turning over to a criminal defendant any exculpatory or relevant evidence found in the personnel files of any police officer testifying in the criminal case while maintaining the confidentiality of those files for all other purposes." Id. at 793 (emphasis added). We emphasized that when exculpatory evidence in a police personnel file is disclosed to a criminal defendant under RSA 105:13-b, that disclosure "is explicitly tied to a particular criminal defendant in a particular criminal case. No further dissemination is either required or permitted." Id. at 792 (emphasis added). Thus, I agree with the Division that we have already answered the question presented by this appeal — we stated in Fuchs that RSA 105:13-b

maintains the confidentiality of police personnel files for all purposes other than fulfilling the prosecutor's duty of turning over to a criminal defendant exculpatory or relevant evidence. Id. at 793. In my view, "for all other purposes" includes for purposes of the Right-to-Know Law.

The majority asserts that Fuchs emphasizes that the disclosure required by RSA 105:13-b is tied to a particular criminal defendant in a particular criminal case, and that RSA 105:13-b operates in the limited context of a specific criminal trial. It then suggests that the Division is attempting to "broaden RSA 105:13-b's application to 'public disclosure,'" which it contends violates our canon of statutory construction that we will not consider what the legislature might have said or add language that the legislature did not see fit to include.

The majority's analysis, however, supports the opposite conclusion. As Fuchs explained, RSA 105:13-b is entitled "Confidentiality of Personnel Files." We concluded that the title evinced the legislature's intent that police personnel files potentially subject to disclosure under RSA 105:13-b "start with a presumption of general confidentiality." Id. at 792 (emphasis added). That the disclosure required by the statute is tied to a particular criminal defendant in a particular criminal case demonstrates the limited nature of the exception to the general confidentiality of police personnel files. Other than disclosure pursuant to that limited exception, RSA 105:13-b prohibits further dissemination — "[n]o further dissemination is . . . permitted." Id. By creating an additional exception to RSA 105:13-b's general confidentiality of police personnel files, it is the majority that is considering what the legislature might have said or adding language that the legislature did not see fit to include.

It might be argued that while RSA 105:13-b makes police personnel files "confidential," that by itself does not mean that disclosure is prohibited under the Right-to-Know Law. RSA 91-A:4, I, provides for inspection of all governmental records "except as otherwise prohibited by statute or RSA 91-A:5." RSA 91-A:5, IV provides an exemption for governmental records that are "confidential," but we have construed that exemption as requiring the use of a balancing test to determine whether the disclosure of "confidential, commercial, or financial" information results in an invasion of privacy. Union Leader Corp. v. Town of Salem, 173 N.H. 345, 355 (2020).

> That determination involves a three-step analysis. First, we evaluate whether there is a privacy interest at stake that would be invaded by the disclosure. Second, we assess the public's interest in disclosure. Third, we balance the public interest in disclosure against the government's interest in nondisclosure and the individual's privacy interest in nondisclosure. If no privacy interest is at stake, then the Right-to-Know Law mandates disclosure. Further, whether information is exempt from disclosure because it is private is judged by an objective standard and

not a party's subjective expectations. Thus, determining whether the exemption for "confidential, commercial, or financial information" applies requires analysis of both whether the information sought is "confidential, commercial, or financial information," and whether disclosure would constitute an invasion of privacy.

Id. (quotations, brackets, and citations omitted).

If RSA 105:13-b were to be construed as making police personnel files "confidential" only in the limited sense that that term is used in the exemption in RSA 91-A:5, IV, then it would follow that only those police personnel records that the government is able to prove, using the three-part balancing test, result in an invasion of privacy will be exempt — all other police personnel files will be public documents available for disclosure under the Right-to-Know Law. See CaremarkPCS Health v. N.H. Dep't of Admin. Servs., 167 N.H. 583, 587 (2015) (stating that the party seeking nondisclosure has the burden of proof). On the other hand, if RSA 105:13-b is construed as prohibiting disclosure of police personnel files other than as provided in RSA 105:13-b itself — that is, other than in the limited case of disclosure to criminal defendants in furtherance of the State's obligations under Brady and Laurie — then RSA 105:13-b would fall within the exception set forth in RSA 91-A:4, I, for records whose disclosure is "otherwise prohibited by statute."

This question is resolved by our decision in Fuchs. First, as noted above, we specifically stated with respect to records disclosed to a defendant pursuant to RSA 105:13-b that "[n]o further dissemination is . . . permitted." Fuchs, 174 N.H. at 792. But more importantly, the result in Fuchs turned on this very question. In Fuchs, the trial court construed RSA 105:13-b as does the majority, yet we unanimously reversed its decision. By holding today that police personnel files may be disclosed under the Right-to-Know Law, the majority is overruling Fuchs, sub silentio, without undertaking a stare decisis analysis.

In Fuchs, the State determined that it was required to provide three defendants with information from the personnel files of one or more police officers because the information was potentially exculpatory. Id. at 788. Citing New Hampshire Rule of Criminal Procedure 12(b)(8)[3], the State then moved for protective orders that would prohibit defense counsel "from sharing or further disseminating these confidential documents and the confidential information

---

[3] New Hampshire Rule of Criminal Procedure 12(b)(8) provides, in pertinent part:

Protective and Modifying Orders. Upon a sufficient showing of good cause, the court may at any time order that discovery required hereunder be denied, restricted, or deferred, or make such other order as is appropriate.

(Emphasis added.)

contained therein with anyone other than Defense Counsel's staff and the Defendant." Id. The trial court denied the motions, opining, as does the majority in the case now before us, that the material could constitute public records subject to disclosure under the Right-to-Know Law unless their disclosure would result in an invasion of privacy. Id. at 788-89. The court reasoned that if the documents provided by the State during discovery were subject to mandatory public disclosure under the Right-to-Know Law, then a protective order barring further dissemination of those public documents would be inappropriate. Id. The court then invited the State to make the fact-specific case necessary under the Right-to-Know Law showing that public disclosure of the specific information at issue would result in an invasion of privacy, explaining that it would not issue "gag orders" in blank, and that the State's reliance on RSA 105:13-b was "misplaced." Id. at 789 (quotation omitted). The State did not attempt to demonstrate that the specific records were exempt from disclosure under RSA 91-A:5, IV — instead it filed a petition for original jurisdiction in this court, seeking review of the rulings denying the requested protective orders. Id.

We held that the trial court erred. "Given the confidentiality accorded police personnel files by RSA 105:13-b, we hold that the State has shown good cause, as a matter of law, for the issuance of protective orders in the cases now before us." Id. at 795 (emphasis added); see N.H. R. Crim. P. 12(b)(8) (requiring showing of "good cause" to obtain protective order). We concluded that material disclosed under RSA 105:13-b "is to be disclosed specifically to the defendant," and "to interpret the statute to allow disclosure or use beyond the defendant in that particular case 'would completely destroy the carefully crafted statutory process by which such information is released.'" Fuchs, 174 N.H. at 794 (brackets and quotation omitted). Significantly, we ruled that as a matter of law the State had shown good cause to prevent further release of the material disclosed under RSA 105:13-b despite the fact that the State had declined the trial court's invitation to demonstrate that the materials fell within the exemption in RSA 91-A:5, IV for confidential information the public disclosure of which would result in an invasion of privacy. In other words, we ruled that good cause existed to prevent disclosure by the defendant of all material covered by RSA 105:13-b — even material that would not be exempt from disclosure under RSA 91-A:5, IV.

The holding in Fuchs cannot be reconciled with the majority's ruling today that police personnel records are subject to disclosure under the Right-to-Know Law. In Fuchs, that is exactly what the trial court ruled — it ruled that information from police personnel files "may constitute public records subject to disclosure under the Right-to-Know Law . . . unless, for specific or particularized reasons, their disclosure would result in an invasion of privacy." Id. at 788. Thus, in order for the State to show good cause for a protective order preventing the defendants from disseminating such public records, the trial court in Fuchs required the State to carry its heavy burden under the

14

Right-to-Know Law of demonstrating that those public records were exempt from disclosure under RSA 91-A:5, IV.[4]  As the trial court rightly indicated, if the State provides discovery of documents subject to disclosure under the Right-to-Know Law, "a protective order is inappropriate." Id. at 789.  Thus, to show good cause for the issuance of a protective order, the State in Fuchs needed to carry its burden of proof under RSA 91-A:5, IV to show that the specific documents were exempt — a showing that the trial court invited the State to make, but which the State declined to undertake.

If this court in Fuchs had intended to hold that RSA 105:13-b made police personnel records "confidential" only in the limited sense that they would be exempt from the Right-to-Know Law when the agency was able to meet its heavy burden of proof under the RSA 91-A:5, IV balancing test, then this court would not have held as it did: that, as a matter of law, the State was entitled to the protective orders.  Rather, this court would have held that the State was entitled to a protective order only with respect to those records that met the balancing test for exemption under RSA 91-A:5, IV.  In short, we would have affirmed the trial court's decision rather than reversing it.

Finally, I believe that, in light of the carefully-crafted statutory framework which governs access to police personnel information under RSA 105:13-b, the majority's holding that such information is obtainable pursuant to a Right-to-Know Law request is, at best, illogical.  See In re N.K., 169 N.H. 546, 551 (2016) ("We will not interpret a statute to require an illogical result." (quotation omitted)); State v. Roger M., 121 N.H. 19, 21-22 (1981).  As the Division points out, parties in a criminal case could entirely circumvent the protections afforded by RSA 105:13-b simply by submitting a public records request under the Right-to-Know Law.  For example, RSA 105:13-b, III limits the ability of the trial judge to review police personnel files in camera — paragraph III provides that no personnel file shall be opened for the purposes of obtaining or reviewing non-exculpatory evidence in a criminal case unless the sitting judge makes a specific ruling that probable cause exists to believe that the file contains evidence relevant to that criminal case.  RSA 105:13-b, III.  "If the judge rules that probable cause exists, the judge shall . . . examine the file in camera . . . ."  Id.  In contrast, under the Right-to-Know Law, whenever there is a question whether materials are exempt from public access, "the trial judge should conduct an in camera review to determine whether portions of the materials meet any of the other statutory exemptions." Prof'l Firefighters of N.H. v. HealthTrust, 151 N.H. 501, 506 (2004) (quotation and brackets omitted).  Thus, a request by a defendant for an officer's personnel file under the Right-to-Know Law will likely result in an in camera review of whatever portion of the file the agency asserts is exempt from disclosure under

---

[4] A public entity seeking to avoid disclosure of material under the Right-to-Know Law bears the "heavy burden to shift the balance toward nondisclosure." Murray v. N.H. Div. of State Police, 154 N.H. 579, 581 (2006).

RSA 91-A:5, IV. It defies logic to require a showing of probable cause under RSA 105:13-b before a court may review police personnel files in camera, while at the same time providing for essentially automatic in camera review whenever the same materials are requested pursuant to the Right-to-Know Law.

For all of the above reasons, I respectfully dissent.